IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CT-3114-FL

| | |
|---|---|
| JEROME D. WRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| JIMMY CLINTON HALES[1] and THE ) | |
| GOLDSBORO POLICE ) | |
| DEPARTMENT, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the motion for summary judgment (DE # 31) pursuant to Federal Rule of Civil Procedure 56(a), filed by defendant Jimmy Clinton Hales ("Hales"). Plaintiff did not respond to Hale's motion. In this posture, the issues raised are ripe for review. For the following reasons, the court grants Hales' motion.

## STATEMENT OF THE CASE

On June 29, 2009, plaintiff, a pretrial detainee, filed this *pro se* complaint pursuant to 42 U.S.C. § 1983, alleging the Goldsboro Police Department and Hales used excessive force against him at the time of his arrest. The court subsequently granted the Goldsboro Police Department's September 29, 2009, motion to dismiss.

On March 15, 2011, Hales filed a motion for summary judgment arguing that plaintiff's claim for excessive force should be dismissed as a matter of law, that his claim is barred pursuant to the

---

[1] Plaintiff initially referred to this party as Clint Hall. The court subsequently was informed that this party's correct name is Jimmy Clint Hales. The court will hereinafter refer to this party by his correct name Jimmy Clint Hales.

United States Supreme Court's ruling in Heck v. Humphrey, 512 U.S. 477 (1994), and that Hales is not a proper party for plaintiff's remaining Eighth Amendment claim regarding his medical care. Although he was notified of Hales' motion, plaintiff failed to respond.

**STATEMENT OF FACTS**

The undisputed facts are as follows. In June 2008, Hales, a police officer for the City of Goldsboro, North Carolina, spotted a vehicle that he suspected was being driven by an individual with an outstanding warrant. Hales Aff. ¶ 3. Hales pulled the driver over, but the driver sped off before he exited his vehicle. Id. ¶ 4. Hales followed the driver, but ultimately was unable to continue his pursuit. Id. Hales subsequently spotted the car in question drive behind a motel. Id. ¶ 5. The driver was not in the car when Hales located the vehicle, so he had the vehicle towed. Id.

Several nights later, Hales again spotted the vehicle he previously unsuccessfully pursued, and followed the driver to Teaser's nightclub. Id. ¶ 7. At the nightclub, Hales spoke with the driver, who turned out to be plaintiff. Hales informed plaintiff that he was not under arrest, and asked if he could speak with him. Id. ¶ 8. Plaintiff told Hales that his name was Michael Taylor, but would not state his date of birth. Id. A patron at the nightclub overheard Hales' conversation with plaintiff and informed Hales that plaintiff's name was Jerome Wright, and not Michael Taylor. Id. ¶ 9.

On June 8, 2008, Hales spotted plaintiff's vehicle and pulled him over. Id. ¶ 10. The officer approached the vehicle, addressed plaintiff as Jerome Wright, and asked for his driver's license. Id. ¶ 11. Plaintiff responded that he did not have it, and that his name was Michael Taylor and not Jerome Wright. Id. Hales then asked plaintiff to step outside of his vehicle. Id. ¶ 13. Plaintiff proceeded to stand up and then sit back down in the seat of his car. Id. Hales instructed plaintiff to stand back up, and plaintiff reached into his pocket. Id. ¶¶ 13-14. Plaintiff then took his hands out

2

of his pocket and stood up, but immediately sat back down and put his hand back in his pocket. Id. Hales became suspicious of plaintiff's activities and grabbed plaintiff's right hand. Id. ¶ 18. Plaintiff responded by using his left hand to place a gun to Hales' head, stating "don't move." Id.

Hales attempted to remove plaintiff's gun from his hand, but was unsuccessful. Id. ¶ 19. Hales then pushed plaintiff's left hand up against plaintiff's car window and ran to the back of the car. Id. As Hales fled, plaintiff shot at Hales, hitting him once in his bullet-proof vest and once under his vest. Id. ¶ 20. In response, Hales withdrew his service weapon and shot at plaintiff through the car window until plaintiff ceased fire. Id. ¶ 21. Hales subsequently called for backup, stating that shots had been fired and that both he and plaintiff had been hit. Id.

After calling for backup, Hales went to plaintiff and found that plaintiff no longer was armed. Id. ¶ 22. Hales found plaintiff lying on the ground, and plaintiff stated: "I'm sorry, my name is Michael Jerome Wright. . . . Hey, you're that same mother f***er from the club." Id. ¶ 23. Hales then handcuffed plaintiff. Id. ¶ 25. As Hales was handcuffing plaintiff, other officers began to arrive on the scene, and Hales was taken to the hospital for treatment of his gunshot wounds. Id. ¶ 26.

On September 28, 2010, plaintiff was convicted of two counts of assault on a law enforcement officer with a firearm, two counts of assault with a deadly weapon with intent to kill inflicting serious injury, possession of a firearm by a convicted felon, carrying a concealed weapon, and possession of marijuana. See Hales' Exhs. C-F.

## DISCUSSION

A.     Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v.

Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Chelates Corp. v. Citrate, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.  Analysis

Hales asserts the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. at 286. The Fourth Circuit has recognized a two--pronged qualified immunity inquiry:

> First, we must decide whether a constitutional right would have been violated on the facts alleged. Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.

Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003) (internal quotations omitted). With respect to the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by, Pearson v.

4

Callahan, 555 U.S. 223 (2009). A court has discretion to decide which step of the two--prong test to analyze first. Pearson, 555 U.S. at 242.

1. Excessive Force

Claims of excessive force during an arrest or investigatory stop are governed by the Fourth Amendment to the United States Constitution and are analyzed under an "objective reasonableness" standard. Graham v. Connor, 490 U.S. 386, 388 (1989); Anderson v. Russell, 247 F.3d 125, 129 (4th Cir. 2001) (stating the question is whether an objectively reasonable officer under the same circumstance would have concluded that a threat existed to justify the particular use of force). This standard mandates "a careful balancing" of Fourth Amendment rights "against the countervailing governmental interests at stake." Graham, 490 U.S. at 396. Application of the standard is highly fact dependent; factors to consider include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest." Id. The reasonableness of the force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. Thus, to allege violation of a constitutionally protected right, plaintiff must allege facts demonstrating that defendants used force in an objectively unreasonable manner under the circumstances.

The undisputed facts in this case demonstrate that plaintiff gave Hales reasonable grounds to believe that he had a weapon because he repeatedly placed his hands inside and outside of his pockets when Hales asked him to step outside of his vehicle. Moreover, plaintiff confirmed Hales' suspicions when he placed a gun to Hales' head and stated "don't move." Hales' attempt to remove plaintiff's gun was unsuccessful, so Hales ran to the back of plaintiff's car for cover. Both parties subsequently fired shots. Plaintiff does not dispute these facts and admits that he shot at Hales four

5

times. DE # 18, p. 1. From these facts, the court concludes that any reasonable officer in Hales' position would have imminently feared for his safety and the safety of others. See Elliot v. Leavitt, 99 F.3d 640, 643 (4th Cir. 1996) (finding officers' use of force reasonable where handcuffed intoxicated arrestee in police car, pulled out a gun, had his finger on the trigger, and pointed it officers); Slattery v. Rizzo, 939 F.2d 213, 214-216 (4th Cir. 1991) (finding use of force reasonable where suspect was stopped as part of a narcotics sting and refused to follow the officer's directions to place his hands where they could be seen).

Although plaintiff concedes that he fired four shots at Hales, he asserts that Hales fired first and that Hales fired fourteen (14) or fifteen (15) shots. The Fourth Circuit has granted qualified immunity in previous cases with similar facts. For example, in Elliott, 99 F.3d at 642-645, the Fourth Circuit found the use of deadly force reasonable where officers shot at the arrestee while the arrestee was handcuffed and pointing a gun at the officers with his finger on the trigger. Although the arrestee in Elliot did not fire his weapon, the Fourth Circuit reasoned that the plaintiff's actions were threatening and that "[t]he Fourth Amendment does not require police officers to wait until a suspect shoots to confirm that a serious threat of harm exists." Id. 643. The Fourth Circuit further found deadly use of force reasonable against unarmed victims who engaged in threatening behavior. See Anderson v. Russell, 247 F.3d 125, 132 (4th Cir. 2001) (finding deadly force reasonable where man suspected of carrying a gun, reached behind his back towards a bulge under his clothing[2]); McLenagon v. Karnes, 27 F.3d 1002, 1007-08 (4th Cir. 1994) (finding deadly use of force reasonable where victim was shot as he was running toward police officers after an officer was warned that a suspect was on the loose and armed).

---

[2] The bulge turned out to be a radio that the suspect was attempting to silence. See Anderson, 247 F.3d at 128.

As for plaintiff's contention that Hales fired more shots, the Fourth Circuit has stated that "[t]he number of shots by itself cannot be determinative as to whether the force used was reasonable." Elliot, 99 F.3d at 643. Here, plaintiff held a gun to Hales' head. When Hales ran for cover he shot through a car window until plaintiff ceased fire. These facts reflect that Hales shot until he eliminated the perceived deadly threat. The facts also demonstrate that plaintiff was resisting arrest at the time he was shot. In accordance with this precedent and in light of the dangerous circumstances, the threat of danger to both Hales and the community at large, an objectively reasonable officer could have believed that defendant's decision to fire his weapon was legally justified. Therefore, Hales is entitled to qualified immunity.

2. Deliberate Indifference to Medical Need

Plaintiff alleges that Hales acted with deliberate indifference to his serious medical condition because he failed to address his medical needs following the shooting. The court again first determines whether Hales violated plaintiff's constitutional rights.

"In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious' "–and the second prong is subjective–the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " See Strickler, 989 F.2d at 1379 (quotations omitted).

Hales presented evidence that plaintiff shot him during the traffic stop, leaving him

7

incapacitated. Hales testified that he had no contact with plaintiff after officers responded to his call for back up. Hales Aff. ¶ 25. Rather, Hales was taken to hospital for treatment for his gunshot wounds. Id. ¶ 26. Plaintiff has not presented any evidence to refute Hales' testimony. Accordingly, plaintiff is unable to satisfy the subjective prong of the Eighth Amendment test, and is unable to establish a constitutional violation. Thus, Hales is entitled to qualified immunity for this claim.[3]

## CONCLUSION

For the foregoing reasons, Hales' motion for summary judgment (DE # 31) is GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 5th day of December, 2011.

LOUISE W. FLANAGAN
United States District Judge

---

[3] To the extent plaintiff alleges that other officers acted with deliberate indifference to his serious medical needs, he has not provided a name for the officers. Additionally, plaintiff has not stated any injury as a result of the alleged conduct or provided sufficient factual support for his Eighth Amendment claim. See White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (stating minimum level of factual support required). Because the court has resolved Hales' motion for summary judgment, to which plaintiff did not respond, further opportunity for plaintiff to amend his complaint is unwarranted.